ANDERSON, Justice.
Appellant Commissioner of Public Safety revoked respondent Tyler Lee Johnson's driver's license after his arrest on suspicion of driving while impaired and refusal to submit to blood and urine tests. Johnson petitioned the district court to review the revocation, arguing that his due process rights were violated when he was read an inaccurate implied consent advisory. The district court agreed with Johnson and rescinded the revocation. The court of appeals affirmed. Johnson v. Comm'r Pub. Safety , 887 N.W.2d 281, 295 (Minn. App. 2016). Because the reading of the implied consent advisory did not prejudice Johnson, we reverse.
*507 FACTS
On November 9, 2015, a police officer responded to the scene of a car accident. Respondent Tyler Lee Johnson had driven through an intersection and collided with a tree. The officer discovered Johnson sitting in the driver's seat of the car, talking on his cell phone, seemingly unconcerned with the accident and unaware of the officer's presence.
The officer asked Johnson to get out of the car and, after Johnson did so, the officer saw a large bottle of pills between the driver's seat and the center console. The pills were a variety of colors and styles. Johnson admitted that the pill bottle belonged to him. Johnson submitted to, and failed, field sobriety tests and refused to submit to a preliminary breath test. The officer suspected, however, that Johnson had not consumed alcohol because Johnson showed no "clues" on the horizontal gaze nystagmus test. The officer arrested Johnson on suspicion of driving under the influence of a controlled substance.
The officer read Johnson an implied consent advisory that stated that refusal to submit to a urine test was a crime. The officer waited a little more than an hour for Johnson to contact an attorney, after which the officer asked Johnson to submit to urine and blood tests. Johnson refused to submit to either test. Appellant Commissioner of Public Safety revoked Johnson's driver's license for refusing to submit to a test.
Johnson sought judicial review of his license revocation. The district court rescinded the revocation, finding that the implied consent advisory was misleading because it incorrectly stated that refusal to submit to a urine test was a crime. Relying on McDonnell v. Commissioner of Public Safety , 473 N.W.2d 848 (Minn. 1991), the district court concluded that the advisory violated Johnson's due process right to not be misled by the threat of legally impossible charges.
The court of appeals affirmed the district court. Johnson , 887 N.W.2d at 295. Applying McDonnell , the court of appeals concluded that the implied consent advisory was inaccurate because none of the exceptions to the warrant requirement advanced by the Commissioner encompassed a compelled urine test. Id. at 289-91. It upheld the rescission on the basis that the threat of legally impossible criminal charges for refusal to submit to a urine test violated due process. Id. at 288-95.
We granted the Commissioner's petition for review.
ANALYSIS
The Commissioner revoked Johnson's driver's license pursuant to the implied consent law. This law governs the administration of blood, urine, and breath tests to drivers suspected of being under the influence of alcohol or controlled or hazardous substances. See Minn. Stat. §§ 169A.50 -.53 (2016). The Commissioner must revoke the driver's license of a person who refuses to submit to a test when a peace officer certifies that there was probable cause to believe that the person was driving a motor vehicle while impaired by alcohol or a controlled or hazardous substance. See Minn. Stat. § 169A.52, subds. 1, 3.[1]
*508 The issue presented involves our decision in McDonnell v. Commissioner of Public Safety , 473 N.W.2d 848 (Minn. 1991).[2] The Commissioner argues that the district court and the court of appeals improperly applied McDonnell as a single-factor, per se due process violation when a person is read an implied consent advisory that is, or later becomes, legally inaccurate. The Commissioner argues that because Johnson did not rely on the implied consent advisory to his detriment, and instead refused to submit to testing, no due process violation occurred under McDonnell . Johnson argues that, under McDonnell , due process rights are violated when the police read to a driver an implied consent advisory that is legally inaccurate. Our analysis begins with McDonnell .
In McDonnell , we addressed challenges to license revocations from three appellants. Relevant here is the discussion regarding appellant Moser, who challenged her license revocation after she was arrested on suspicion of driving while impaired. 473 N.W.2d at 851. After her arrest, an officer read Moser an implied consent advisory that warned of criminal penalties for refusing to submit to testing. Id. Moser submitted to a breath test, failed, and her license was revoked for that failure. Id.
In fact, Moser could not have been prosecuted for the crime of test refusal because, at the time, a person could be prosecuted for test refusal only when the person's driver's license had been previously revoked. Id. at 853 ; see Minn. Stat. § 169.121, subd. 1a (Supp. 1989) (defining the crime of test refusal). Moser's license had not been previously revoked. McDonnell , 473 N.W.2d at 851. Nonetheless, the applicable statute required that warning. See Minn. Stat. § 169.123, subd. 2(b)(2) (1990) ("[T]he person shall be informed: ... that if testing is refused, the person may be subject to criminal penalties....").
We concluded that Moser's due process rights were violated when, after being threatened with impossible criminal charges, she submitted to testing because of the threatened charges. McDonnell , 473 N.W.2d at 853-55. We reasoned that Moser's interests were prejudiced by the inaccurate implied consent advisory because Moser would not have submitted to the testing but for the threat of the impossible criminal penalties. Id. at 855. We held that Minn. Stat. § 169.123, subd. 2(b)(2), and the relevant part of the implied consent advisory, were unconstitutional as applied to Moser and rescinded her license revocation. 473 N.W.2d at 855.
But in McDonnell we did not recognize a due process violation solely because a driver had been misled. Our decision relied on three key elements in holding that a violation of due process occurred in Moser's circumstances. See id. at 853-55. A license revocation violates due process when: (1) the person whose license was revoked submitted to a breath, blood, or urine test; (2) the person prejudicially relied on the implied *509 consent advisory in deciding to undergo testing; and (3) the implied consent advisory did not accurately inform the person of the legal consequences of refusing to submit to the testing. See id. What we recognized in McDonnell was a due process violation in revoking a driver's license when the driver submitted to testing because the implied consent advisory inaccurately stated that refusing to submit to testing was a crime. See id.
Having reviewed the applicable law, we next turn to the facts and circumstances of this case. Johnson's claim clearly fails on the first and second elements. Johnson refused to submit to blood and urine tests. Further, there is no concern here that Johnson was prejudiced by relying on misleading statements by the officer about the consequences of refusing a test because Johnson did not submit to testing. See McDonnell , 473 N.W.2d at 855. We need not consider whether the implied consent advisory was legally inaccurate when read to Johnson because he cannot establish the first two elements of his McDonnell claim. Because there was no violation of due process, Johnson is not entitled to a rescission of his license revocation.
CONCLUSION
For the foregoing reasons, the decision of the court of appeals is reversed.
Reversed.

Under the implied consent law, "[i]f a person refuses to permit a test, then a test must not be given, but the peace officer shall report the refusal to the commissioner." Minn. Stat. § 169A.52, subd. 1. "Upon certification by the peace officer that there existed probable cause to believe the person had been driving, operating, or in physical control of a motor vehicle in violation of section 169A.20 ..., and that the person refused to submit to a test, the commissioner shall revoke the person's license ... to drive." Id. , subd. 3(a).

Based on the parties' presentation of this case, we assume, without deciding, that Johnson's claim is best analyzed as a challenge under McDonnell . 473 N.W.2d 848. In the petition for review, the Commissioner argued that the Fourth Amendment to the United States Constitution provides the proper framework for analyzing Johnson's claims. Although we granted review on the question of whether the Fourth Amendment was the proper framework, the Commissioner did not brief that argument and did not advance that claim during oral argument. We therefore will not decide whether the Fourth Amendment is the proper framework for resolving Johnson's claim. See Pfeil v. St. Matthews Evangelical Lutheran Church , 877 N.W.2d 528, 535 (Minn. 2016) (declining to address an issue that was not briefed or argued).